**UNITED STATES of America,**
**Appellee,**

v.

**Tejbir S. OBEROI, Defendant–**
**Appellant.**

**Docket No. 02–1721.**

United States Court of Appeals,
Second Circuit.

Argued: Feb. 4, 2003.

Decided: June 3, 2003.

Timothy W. Hoover, Federal Public Defender's Office, Western District of New York, Buffalo, N.Y. (Joseph B. Mistrett and MaryBeth Covert, on the brief), for Defendant–Appellant.

John E. Rogowski, Assistant United States Attorney for the Western District of New York, Buffalo, N.Y. (Michael A. Battle, United States Attorney, and Anthony M. Bruce, Assistant United States Attorney, on the brief), for Appellee.

Before: JACOBS, POOLER, and SOTOMAYOR, Circuit Judges.

POOLER, Circuit Judge.

The Federal Public Defender's Office for the Western District of New York ("Defender") appeals from an interlocutory order denying its motion to withdraw as counsel for Tejbir S. Oberoi. During the course of its representation of Oberoi, the Defender learned that a long-term and current client of the office would testify against Oberoi and duly notified the court.

After appointing new counsel for Taofik Kaid, the witness, and obtaining his consent to the Defender's use in cross examination of secrets and confidences that Kaid had shared with the Defender, the court declined to relieve the Defender. Based largely on *United States v. Leslie*, 103 F.3d 1093 (2d Cir.1997) and *United States v. Lussier*, 71 F.3d 456 (2d Cir. 1995), the district court concluded that Kaid's consent cured any potential conflict and declined to make any inquiry of Oberoi despite the Defender's assertion that the office still had a conflict.

In both *Leslie* and *Lussier*, (1) the issue of disqualification and the nature of the conflict were raised before trial; (2) defense counsel perceived no conflict and, at least tacitly, consented to continue to represent the defendant; and (3) the defendant first objected to the perceived conflict on post-conviction appeal. An interlocutory appeal from an order refusing to disqualify defense counsel that sincerely and reasonably believes prior representation of a witness will prevent it from effectively representing its current client presents fundamentally different questions. Due to these differences, on February 5, 2003, we issued an order vacating the district court's order and directing the district court to appoint substitute counsel for Oberoi. This opinion sets forth our reasoning.

## BACKGROUND

The Defender represented Kaid in a narcotics prosecution from January 2000 until November 6, 2002, when the district court appointed new counsel for Kaid. On February 13, 2002, the district court appointed the Defender as counsel for Oberoi after granting a motion to withdraw from Oberoi's long-term retained counsel. The charges against Oberoi, which involved fraud in submitting claims from his dental practice to various insurers, are unrelated to those against Kaid.

On September 26, 2002, the Defender moved to adjourn the trial then scheduled for November 12, 2002. The motion was based, in part, on the Defender's recently acquired knowledge of a potential conflict of interest. Specifically, one of the patients listed in the indictment against Oberoi was Kaid. Because the indictment used codes for the patients, the conflict had not been immediately apparent.

On October 2, 2002, the prosecutor in *Oberoi* requested a *Curcio* hearing, which addresses the willingness of a defendant to waive a potential conflict of interest, *see United States v. Curcio*, 680 F.2d 881 (2d Cir.1982), and the prosecutor in *Kaid* requested that new counsel be appointed for Kaid. The government also disclosed that Kaid would testify against Oberoi. On October 11, 2002, the parties appeared on the *Oberoi* case. The government changed its position slightly, indicating that it would not call Kaid but that it still wanted to present evidence on the counts involving Kaid. The Defender suggested that the court should sever and dismiss the counts involving Kaid because the defense might need to call him if the government continued to prosecute the relevant counts. The court appointed Patrick Brown as standby counsel for Oberoi and Robert Convissar as standby counsel for Kaid.

On the scheduled date for Oberoi's *Curcio* hearing, November 5, 2002, the government again indicated it did not intend to call Kaid as a witness but also argued that if Kaid had new counsel and waived the attorney-client privilege, the Defender could cross-examine Kaid and there would be no conflict. The court instructed the Defender to talk with Oberoi to determine his position on waiver before the court began the *Curcio* hearing. After the Defender said that Oberoi might not waive the conflict, the court adjourned the proceeding until November 13, 2002, to give Oberoi additional time to think about his choice.

The district court also began a *Curcio* hearing in the *Kaid* case on the fifth of November. Because Kaid told the court that he did not intend to waive his attorney-client privilege, the hearing quickly ended. The next day, Kaid repeated that he did not intend to waive his privilege, causing the court to relieve the Defender and appoint Convissar as Kaid's counsel.

At Oberoi's adjourned *Curcio* hearing on November 13, 2002, the government informed the court that the question of whether Kaid would waive his attorney-client privilege was still open. The court directed that Kaid and Convissar appear the following morning and told the Defender and Brown that they were welcome to appear.

The next day the court called the *Kaid* case. The Defender and Oberoi were present in the gallery. Kaid apparently had changed his mind regarding waiver of the attorney-client privilege. The court asked Kaid whether he understood that under the rules of ethics, the Defender would not be able to cross-examine Kaid in the *Oberoi* matter concerning anything Kaid had revealed to the Defender during the period of their attorney-client relationship. After Kaid indicated his understand-

ing, the court asked, "[i]s it your intent to waive this right or give up this right that you have, and allow [the Defender] to use any information that he may have obtained from you ... during any cross-examination of you ... in his representation of Dr. Oberoi[?]" Kaid responded, "[t]hat's correct, sir." The court asked further questions to make sure that Kaid understood what he was waiving, culminating with: "So you'll permit [the Defender] to, in open court, ... ask any questions, even if it reveals confidential information between you and him?" Kaid responded, "[y]es."

The court then instructed the Defender, "be ready to go to trial on the date that's set. ... Any more obstacles we have to overcome?" The Defender answered that the court must still determine whether Oberoi waived the conflict because Oberoi "ha[d] a right to a defense attorney who is not going to be cross-examining witnesses that are former clients. He has a right to a duty of [undivided] loyalty." The Defender also argued that Kaid's waiver did not affect Oberoi's rights. The court disagreed but allowed the Defender to brief the issue.

Kaid later entered into a plea agreement with the government in which the government promised not to oppose a sentence at the lowest point in the applicable Guidelines range but reserved the right to change its position based on newly acquired information.

On November 20, 2002, the Defender filed a written motion for withdrawal and disqualification. One week later, the district court heard oral argument and issued an oral order denying the motion and refusing to hold a *Curcio* hearing. At the time of the motion, hearing, and decision, the prosecution against Oberoi had been pending slightly more than three years. The court found that because of Kaid's waiver, the Defender had neither an actual nor a potential conflict of interest. Relying on *Leslie*, 103 F.3d at 1098, the court also found no need for a *Curcio* hearing. On the same date, the Defender filed a notice of appeal. On December 13, 2002, the court denied Oberoi's motion for a stay pending appeal. On December 20, 2002, we stayed the district court's order and all further proceedings in the Oberoi prosecution.

The Defender argues on appeal that an actual conflict of interest remains because (1) the Defender will not be able to cross-examine Kaid without using confidences and secrets to his detriment in violation of ethical rules and (2) the Defender still has split or divided loyalties to Kaid and Oberoi.

## DISCUSSION

### I. Jurisdiction

■ Because the district court's order conclusively determined the issue of the Defender's continued representation of Oberoi and cannot be effectively reviewed on final appeal, we have jurisdiction over this interlocutory appeal. *Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir.1999).

### II. Standard of review

■ We will reverse a district court's denial of a motion to withdraw only for abuse of discretion. *Whiting*, 187 F.3d at 320. We must grant "considerable deference" to the district court's decision especially when "the prosecution of the suit is likely to be disrupted by the withdrawal of counsel." *Id.* at 320–21 (internal quotation marks and indicators of alterations from original omitted). However, if forcing an attorney to continue representation will cause a violation of the Code of Professional Responsibility and possibly subject the attorney to sanctions, it will be an abuse of

discretion not to grant the motion to withdraw. *See Id.*

## II. Does the Defender Have an Actual Conflict of Interest?

The Defender contends that because it concurrently represented Kaid and Oberoi, New York Disciplinary Rule 5–105 applies. This rule provides that

B. A lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, or if it would be likely to involve the lawyer in representing differing interests, except to the extent permitted under DR 5–105(C).

Although the Defender argues that it falls within DR 5–105(B) because it represented Kaid and Oberoi at the same time, DR 5–105(B) governs "continue[d] multiple employment." Once the district court relieved the Defender as Kaid's counsel, it no longer had multiple clients and its situation did not fit within DR 5–105(B).

DR 5–108 covers conflict of interest issues related to former and present clients and provides:

(A) ... a lawyer who has represented a client in a matter shall not, without the consent of the former client after full disclosure:

1. Thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client.

2. Use any confidences or secrets of the former client except as permitted by DR 4–101(C) or when the confidence or secret has become generally known.

DR 4–101(a) defines "confidence" as the "information protected by the attorney-client privilege under applicable law" and "secret," as "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." DR4–101(B) states:

Except when permitted under DR 4–101(C), a lawyer shall not knowingly:

(1) Reveal a confidence or secret of a client.

(2) Use a confidence or secret of a client to the disadvantage of the client.

(3) Use a confidence or secret of a client for the advantage of the lawyer or of a third person, unless the client consents after full disclosure.

The exception section, subdivision C, allows a lawyer to "reveal ... [c]onfidences or secrets with the consent of the client or clients affected, but only after a full disclosure to them." Because subdivision C governs *"reveal[ing ]* ... confidences or secrets" upon consent of the client, the Defender argues that it does not authorize an attorney to *"use* a confidence or secret of a client to the disadvantage of the client" even when the client consents. DR 4–101(B), (C) (emphases added).

The Defender's interpretation is plausible and, as one commentator points out, there are sound policy reasons for refusing to allow a criminal defendant to consent to the use of his secrets and confidences to his disadvantage. Gary F. Lowenthal, *Successive Representation by Criminal Lawyers,* 93 Yale L.J. 1, 51 (1983) (pointing out that attacking the credibility of a former client using information gained from that client may be "humiliating to the witness and degrading to the witness's former lawyer" and that a lawyer's discomfort in cross-examining a former client "may be communicated subtly to the trier of fact" to the disadvantage of the current client).

However, most authorities hold that an attorney may use the confidences of a former client to cross-examine that client if both the former and the current client consent. And, this court has suggested that, under some circumstances, the consent of the former client may be enough.

We first consider two opinions from the New York State Bar Association's Committee on Professional Ethics, New York Ethics Opinion 592 (1988) and New York Ethics Opinion 605 (1989). In Number 592, 1988 WL 236150 (June 9, 1988), the committee considered a situation in which a public defender represented two criminal defendants. The first client told the public defender that the second client had admitted to committing the crime with which the second client was charged. The first client also asked for help in obtaining favorable consideration from the district attorney in return for his testimony against the second client. *Id.* at *1. The committee found that the defender was faced with an actual conflict and must withdraw from representation of both clients. *Id.* at *3. However, the committee cited and relied on a county ethics opinion, which stated "[i]f the lawyer in the course of his representation acquired confidential information from one of the parties that would operate to the disadvantage of either party in any matter where their interests were conflicting, he would have to withdraw from representation of both clients unless they consented to continued representation after full disclosure." *Id.* at *2 (quoting N.Y. County 646 (1975)). Thus, the committee apparently contemplated that consent, at least by both parties, could obviate the problem described in the county opinion.

The second ethics opinion, No. 605, 1989 WL 253477 (Nov. 17, 1989), addresses the question of an attorney who will have to reveal the confidences of a former client in order to effectively represent a new client.

The opinion indicates that successive representation would be permissible if "(1) the subject matter of the new employment is totally unrelated to the subject matter of the former representation (i.e., the underlying facts of each representation must be wholly distinct), (2) the new employment does not require the lawyer to use or attempt to use confidences and secrets obtained in the former representation, and (3) the new representation does not create an appearance of actually conflicting interests with, or professional disloyalty to, the former client." *Id.* at *2. However, the committee also stated in a completely different section of its opinion, "[v]iewing this situation as a so-called Canon 4 conflict as we do, it is clear from the Code and our prior opinions that client consent may purge the conflict. DR 4–101(C)(1); N.Y. State 555 (1984); N.Y. State 490 (1978)." *Id.* at *3. Although the Defender argues that the language of Ethics Opinion No. 605 requires the presence both of the three factors previously recited and of client consent to cure the conflict, the opinion cannot reasonably be read this way.

The committee went on to caution, however, "that the deference given in prior cases to the current client's consent to the successive representation does not, in light of the Supreme Court's recent opinion in *Wheat v. United States,* [486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140] (1988), reflect the current approach by the courts," which must now look beyond the consent "to ensure that criminal defendants receive a trial that is fair." *Id.* (internal citations omitted).

Reading both opinions together, it appears that the committee would allow use of a former client's confidences and secrets where (1) the first client consented to the defense attorney's revealing confidences and secrets; (2) the current client consented to continued representation by the at-

torney with the full knowledge that the attorney would have to cross-examine a former client; and (3) the court made an independent examination of the second client's ability to receive a fair trial with the defense attorney representing him.

Our cases also support allowing waiver of the conflict that arises when an attorney must cross-examine a former client in order to effectively represent a current client. In *United States v. Lussier*, 71 F.3d 456 (2d Cir.1995), we affirmed a criminal conviction despite a claim of actual conflict of interest based on defense counsel's prior representation of a government witness and current representation of the defendant, Roger Lussier. The witness waived attorney-client privilege and acknowledged that he knew defense counsel could cross-examine him. *Id.* at 460. And, Lussier waived any conflict of interest. *Id.* We agreed with the district court's conclusion that "the primary area of conflict—[defense counsel's] potential inability to cross-examine [the witness] fully at trial—was significantly diminished by this waiver." *Id.* at 462. We held that "[b]ecause there existed only a potential for a non-severe conflict, a valid waiver could be made." *Id.* In light of Lussier's sophistication, we found his in-court waiver sufficient despite the district court's failure to appoint independent counsel to advise him concerning his choices. *Id.* at 463. Finally, because the former client's testimony did not hurt Lussier, we concluded "that, even if the waiver were somehow flawed, Lussier suffered no prejudice from [defense counsel's] purportedly deficient cross-examination of [the former client]." *Id.* at 464.

In *United States v. Leslie*, 103 F.3d 1093 (2d Cir.1997), we considered the conflict issue in the context of defense counsel's prior representation of a potential witness who ultimately did not testify. The former

client's new counsel represented to the district court that his client was willing to waive any conflict. *Id.* at 1097. However, the district court did not question the former client or make a *Curcio* inquiry of the current client. *Id.* We affirmed the conviction, finding that the district court conducted a sufficient inquiry and "correctly concluded that [the former client's] waiver obviated the need for a *Curcio* hearing." *Id.* at 1098. Alternatively, we held that even if defense counsel had a conflict of interest, it was "at best, only a potential conflict," requiring Leslie to show prejudice, which he could not do because the former client never testified. *Id.* at 1099.

 We draw from *Leslie* and *Lussier* the following clear principles: (1) a client will not be heard on appeal to complain of a conflict of interest premised on his attorney's prior representation of a government witness if both the witness and the defendant waived any potential conflict and (2) an appellant-defendant cannot raise as error a potential conflict based on his attorney's prior representation of a potential witness where that potential witness, through counsel, waived any conflict and, in any event, did not testify against the defendant. *Leslie* also suggests that a *Curcio* inquiry may not be necessary when the potential witness consented to his former attorney's use of confidences and secrets in cross examination. Thus, it may be that the Defender's continued representation of Oberoi would not have resulted in reversal of any subsequent conviction.

### III. Did the District Court Abuse its Discretion by Denying the Defender's Motion?

However, *Leslie* and *Lussier* do not dictate the outcome of this appeal, which arises in a different procedural context and presents the question of whether defense counsel should have been allowed to with-

draw rather than the Leslie/Lussier question, whether an allegedly conflicted defense counsel denied the defendant a fair trial. As the Supreme Court stated in *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), timely objection by defense counsel presents a very different question. *Id.* at 490, 98 S.Ct. 1173 (requiring no showing of prejudice in part because "in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process"); *see also Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 1245, 152 L.Ed.2d 291 (2002) (requiring that petitioner show prejudice "since this was not a case in which ... counsel *protested* his inability simultaneously to represent multiple defendants") (emphasis added). In *Leslie*, the defendant himself asked the court to appoint the allegedly conflicted attorney as his new counsel. 103 F.3d at 1097. New counsel for the witness then explained to the court that the witness was prepared to waive any conflict. When the witness's attorney made this statement, neither Leslie nor the attorney he wanted to represent him objected or said anything about a conflict of interest. *Id.* In *Lussier*, the government first drew the court's attention to defense counsel's potential conflict of interest. 71 F.3d at 460. After the witness waived any conflict, the defendant stated that he wished to continue to have his potentially conflicted attorney represent him. *Id.* This case is unlike *Leslie* and *Lussier* in that the Defender moved to withdraw and continued to believe that he could not ethically conduct an effective cross-examination of Kaid even after Kaid, represented by new counsel, consented to the Defender's use of his secrets and confidences.

As we have explained, the pertinent authorities likely would allow the Defender to continue to represent Oberoi in the circumstances of this case. However, as we also have discussed, the Defender did not interpret the disciplinary rule unreasonably when it argued that the rule prohibits the use of a client's confidences and secrets to his disadvantage even with consent and consequently prohibited the Defender from cross-examining Kaid based on his confidences and secrets. Even interpreting the pertinent rule as the government suggests, we note that the disciplinary rules represent the minimum ethical obligations of an attorney and that an attorney does not act unreasonably by maintaining a higher standard. The duty to preserve a former client's secrets is a very important one. *See Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir.1973) ("The dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case. These considerations require application of a strict prophylactic rule to prevent any possibility, however slight, that confidential information acquired from a client during a previous relationship may subsequently be used to the client's disadvantage."). Thus, an attorney who expresses ethical reservations about cross-examining a former client using his secrets and confidences, even with client consent, acts in the highest tradition of the profession.

As Lowenthal points out, use by an attorney of a former client's secrets is degrading for the attorney and humiliating for the witness. Here, the Defender's cross-examination also could affirmatively disadvantage Kaid. The government agreed not to oppose a sentence at the

lowest point of the Guidelines range but reserved its right to modify this position if it learned new information. Certainly the possibility that relevant negative information would emerge on cross-examination is not a remote one. And, only the Defender knows with certainty whether it has information of this sort.

In order to avoid lurking potential conflicts and to preserve the public's confidence in the integrity of the judicial system, a district court has discretion to reject a defendant's waiver of an actual or potential conflict. *Wheat,* 486 U.S. at 162–63, 108 S.Ct. 1692; *United States v. Falzone,* 766 F.Supp. 1265, 1272 (W.D.N.Y.1991). Some courts also have rejected a former client's consent or representations that the former client will consent. *See United States v. Vasquez,* 995 F.2d 40, 42 (5th Cir.1993) (affirming district court's rejection of defendant's waiver despite representation by defense counsel that another client who would be a witness against defendant "had no problem with his joint representation"): *United States v. Messino,* 852 F.Supp. 652, 654, 656–57 (N.D.Ill.1994) (refusing to accept current client's waiver of conflict and rejecting defense counsel's offer to secure waiver of former client); *United States v. Alex,* 788 F.Supp. 359, 361 (N.D.Ill.1992) (disqualifying counsel where former clients submitted affidavits consenting to subsequent representation but not consenting to disclosure of confidences).

■ Given this precedent, we believe that the district court abused its discretion by accepting Kaid's consent as a sufficient basis for denying the Defender's motion to withdraw. The combined circumstances in this case—the Defender's sincere and not unreasonable belief that it could not adequately represent Oberoi given its continued duty of loyalty to Kaid; the significant possibility that effective representation of Oberoi would require the Defender to cross-examine Kaid in a way that might harm Kaid when he was sentenced; the lack of circumstances suggesting tactical abuse; and the district court's failure to question Oberoi concerning his willingness to waive the conflict—created a substantial danger that the proceedings in both cases would not "appear fair to all who observe them." *Wheat,* 486 U.S. at 160, 108 S.Ct. 1692. Because "the institutional interest in the rendition of just verdicts in criminal cases" may have been jeopardized by the district court's refusal to excuse the Defender, we have vacated this order and remanded for appointment of new counsel. *Id.*

### CONCLUSION

For the reasons we have discussed, we have vacated the district court's denial of the Defender's motion to withdraw and remanded for appointment of new counsel. We also vacate the stay of proceedings in the district court.