UNITED STATES of America

v.

**Gustavo ARMAZA Defendant.**

**No. 03 CR. 61(JGK).**

United States District Court,
S.D. New York.

Sept. 4, 2003.

Julian D. Schreibmam, New York City, for U.S.

Murray Richman, Law Offices of Murray Richman, Bronx, NY, for Gustavo Armaza.

## OPINION AND ORDER

KOELTL, District Judge.

The Government moves to disqualify the Law Offices of Murray Richman ("Richman Firm") from representing the defendant Gustavo Armaza ("Armaza") because of the firm's prior representation of Alvin Blassingame ("Blassingame"), a witness who is cooperating with the Government and who is expected to be a significant witness against Armaza at trial.

The Court has appointed independent counsel to represent Armaza and to consult with him as to whether he wishes the Richman Firm to represent him. Armaza has indicated his desire to have the Richman Firm, and particularly Stacey Richman, continue to represent him and to waive any possible conflicts of interest. The Court will conduct a thorough inquiry pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir.1982), before permitting such representation. The issue at the outset, however, is whether the Richman Firm has an actual conflict that cannot be waived by Armaza. The Court held an evidentiary hearing on July 31, 2003 to determine the nature of the prior representation and now makes the following findings of fact and reaches the following conclusions of law.

### I.

Based on the record at the hearing there is no credible evidence that Murray Richman ("Richman") personally ever actually represented Blassingame on a criminal matter. Although Blassingame had remembered Richman representing Blassingame in a juvenile criminal proceeding, Richman denied such representation, and, in fact, Richman would not have been practicing law at the times recalled by Blassingame. (Transcript of Hearing dat-

ed July 31, 2003 ("Tr."), at 20, 69.) While Richman did recall meeting Blassingame in connection with a multiple-defendant case in this Court in the 1980s, Richman was representing a co-defendant, and there is no evidence that Richman represented Blassingame in connection with that case or obtained any confidential information from Blassingame. (*Id.* at 70.) Blassingame recalled Richman representing him in connection with a state court firearms and narcotics case in 1980–81. (*Id.* at 22.) However, Richman denied knowledge of such representation, (*id.* at 71–73), and the Government has forthrightly produced records of that case in which it is clear that Blassingame was represented throughout that proceeding by another attorney, who is not alleged to be associated with the Richman Firm. (Letter of the Government to this Court dated Aug. 21, 2003, and Exhibit A thereto.)

Lawyers in the Richman Firm did represent Blassingame in connection with a state narcotics charge in 1983 for which Blassingame received five years probation. (Tr. at 23–24, 76, 78.) While Blassingame had recalled that Richman represented him, that recollection appears to be mistaken. (*Id.* at 23–24.) There is no credible evidence that Richman actually represented Blassingame in that case. The records of the case, produced by the Government, reflect appearances for Blassingame by two lawyers, one of whom is not now associated with the Richman Firm. (*Id.* at 71–73, 76–78; Government's Hearing Exh. 1.) Blassingame recalled that Richman represented him in some civil matters, including a house closing, but Richman credibly denied such representations. (*Id.* at 71–72.) Moreover, it is clear that none of those representations is a current representation and none could be considered even remotely related to any of the issues in this case. (*Id.* at 24–

26, 74–75.) Thus, the possibly relevant prior representation by the Richman Firm consists of the representation of Blassingame by the Richman Firm in connection with one of Blassingame's convictions about twenty years ago. The Government does not allege that any lawyer in the Richman Firm represented Blassingame in any criminal case in the last twenty years.

In addition to prior representation, there have been two relevant recent contacts between Blassingame and Richman. Blassingame was indicted in 2000 and charged in this Court with violations of the federal narcotics laws. In response to that indictment, Blassingame entered into a cooperation agreement with the Government, pursuant to which he is expected to testify in the current case against Armaza. There is no contention that Richman ever represented Blassingame in connection with that case. However, at some point, Blassingame called Richman and expressed reservations about the lawyer who was representing him in connection with his potential sentence in that case. Richman assured Blassingame that he had a good lawyer and indicated that Richman did not want to get involved. (Tr. at 34, 73–74, 82–85.) There is no credible evidence that the contacts went beyond this exchange. While Blassingame recalled somewhat more extensive conversations, Richman credibly denied them, and there is no question that Richman never agreed to represent Blassingame, and there is no credible evidence that Richman has any confidential information from Blassingame as a result of any contact. (*Id.* at 30–34.)

The second relevant contact relates directly to this case. Recently, Blassingame became aware that the defendant in this case, against whom he was scheduled to testify, was being represented by the Richman Firm. When he became aware of that

fact, Blassingame called Richman and explained that he was going to testify against a client of the Richman Firm. Richman told Blassingame that he should not say anything else, that he should not worry, and that the United States Attorney's Office would contact Richman. (Tr. at 28–30, 73–74.) Blassingame was not seeking legal advice when he called Richman. (*Id.* at 29–30.)

In this case, Stacey Richman from the Richman Firm has been representing Armaza throughout the case. She seeks to continue to represent Armaza with the consent of Armaza. The alleged conflicts in this case arise from the representation of Armaza by two other attorneys from the Richman Firm in connection with a criminal case in 1983–84, about twenty years ago, and two recent contacts between Blassingame and Richman, neither of which involved Richman actually representing Blassingame.

## II.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant generally has a right to be represented by an attorney of his choosing, but "[a] defendant's right to counsel of his choice is not an absolute one." *United States v. Ostrer,* 597 F.2d 337, 341 (2d Cir.1979). "[T]he essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

■ The sometimes conflicting interests protected by the Sixth Amendment can create a dilemma for district court judges: "if the judge disqualifies the attorney, the defendant may argue that he was unfairly denied the attorney of his choice; if the judge fails to so disqualify the attorney, the defendant may still contend that he was denied effective assistance of counsel." *United States v. Fulton,* 5 F.3d 605, 614 (2d Cir.1993). Given this dilemma, the Court of Appeals for the Second Circuit has explained:

> The solution to this clash between a defendant's Sixth Amendment right to counsel and the same defendant's right to a fair trial is a balancing of interests that is committed to the discretion of the trial judge, who has "broad latitude" in this matter. [*Wheat v. United States,* 486 U.S. 153, 163, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).] There is a presumption in favor of a defendant's choice of counsel, but this may be overcome "by a showing of a serious potential for conflict." *Id.; see also United States v. Arrington,* 867 F.2d 122, 128 (2d Cir. 1989) (right to counsel of choice not absolute). In balancing what can be competing interests of the Sixth Amendment, the trial court has "an independent duty to ensure that criminal defendants receive a trial that is fair." *Wheat,* 486 U.S. at 153, 108 S.Ct. 1692; *see also United States v. Scopo,* 861 F.2d 339, 344 (2d Cir.1988).

*United States ex rel. Stewart v. Kelly,* 870 F.2d 854, 856 (2d Cir.1989). In this case, the balancing of interests weighs heavily in favor of upholding Armaza's right to be represented by Stacey Richman, the counsel of his choice, because the Richman Firm's past representation of Blassingame does not present an actual conflict that could not be knowingly and intelligently waived by Armaza following a *Curcio* hearing.

■ The Sixth Amendment right to assistance of counsel includes the right to be represented by an attorney who is free

from conflicts of interest. *See, e.g., Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *United States v. Schwarz*, 283 F.3d 76, 90 (2d Cir.2002). This right would be violated if the attorney has "(1) a potential conflict of interest that result[s] in prejudice to the defendant, or (2) an actual conflict of interest that adversely affect[s] the attorney's performance." *United States v. Levy*, 25 F.3d 146, 152 (2d Cir.1994). "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *Schwarz*, 283 F.3d at 91 (internal quotation marks omitted). An attorney has a potential conflict of interest if "the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *United States v. Kliti*, 156 F.3d 150, 153 n. 3 (2d Cir.1998).

■ Once the district court is apprised of the possibility of a conflict of interest, the court is obligated to "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *Levy*, 25 F.3d at 153. If the court determines that the conflict is so "severe" that "no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation," then the court is "obliged" to disqualify the attorney. *Id.; see also Schwarz*, 283 F.3d at 95. If, however, the court determines that "the attorney suffers from a lesser [actual] or only a potential conflict—such that a rational defendant could knowingly and intelligently desire the conflicted lawyer's representation, the court should follow the procedures set out in *Curcio* " to obtain a valid waiver from the defendant of his

right to a non-conflicted lawyer. *Levy*, 25 F.3d at 153. If the court's inquiry finds no genuine conflict at all, nothing further is required. *Id.* As the Court of Appeals explained in *Schwarz*:

> In most cases when a defendant is faced with a situation in which his attorney has an actual or potential conflict of interest, it is possible for him to waive his right to conflict-free counsel in order to retain the attorney of his choice. Where an actual or potential conflict has been validly waived, the waiver cannot be defeated simply because the conflict subsequently affects counsel's performance; such a result would eviscerate the very purpose of obtaining the waiver.

*Schwarz*, 283 F.3d at 95 (internal citations omitted).

The Court of Appeals has recently emphasized that its opinions in *United States v. Fulton* and *United States v. Schwarz* "illustrate the very narrow category of cases in which we have held attorney conflicts to be unwaivable." *United States v. Perez*, 325 F.3d 115, 126 (2d Cir.2003). In *Fulton*, the defendant's trial counsel had been implicated by a government witness in a heroin conspiracy related to the conspiracy in which his client had been implicated. The Court of Appeals concluded that the "breadth and depth of this kind of conflict," where the attorney would be more interested in self-preservation than in presenting a vigorous defense, made it impossible to obtain a meaningful waiver from the defendant. *Fulton*, 5 F.3d at 613. Likewise, in *Schwarz*, the defense counsel had received a two-year, $10 million retainer to represent the Policeman's Benevolent Association (PBA) in connection with a civil case in which the PBA's interests conflicted with the interests of defendant Schwarz in his criminal trial. The Court of Appeals found that "[l]ike the conflict in *Fulton*, [the attorney's] conflict

so permeat[ed] the defense that no meaningful waiver could be obtained." *Schwarz*, 283 F.3d at 96 (internal quotation marks and citation omitted).

In *Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), the Supreme Court has further clarified the meaning of "actual conflict" for the purposes of the Sixth Amendment. Under *Mickens*, a conflict that deprives a defendant of his constitutional right to the effective assistance of counsel is "precisely a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties." *Id.* at 171, 122 S.Ct. 1237 (emphasis in original). The Supreme Court concluded that "defects in assistance [of counsel] that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Id.* at 166, 122 S.Ct. 1237. In *Mickens*, the Supreme Court found that a defendant who was prosecuted for premeditated murder and forcible sodomy had not established ineffective assistance of counsel where one of his lawyers had previously represented the victim of the crime, but where the defendant had not shown an adverse effect on his defense as a result of the prior representation. The *Mickens* standard for an actual conflict under the Sixth Amendment was addressed in connection with a habeas petition claiming ineffective assistance of counsel at a trial in which the trial court did not inquire into a potential conflict of interest about which the court knew or reasonably should have known. Despite the different procedural posture from the inquiry required in this case, *Mickens* clarifies the high threshold that must be satisfied before an alleged conflict could arise to the level of a constitutional violation.

A conflict of interest may exist when a defense attorney cross-examines a former client who is a witness against the defendant, because the attorney's ethical obligation not to disclose the prior client's confidences and secrets might make the attorney's cross-examination of the witness less vigorous than it might otherwise be. *See United States v. Lussier*, 71 F.3d 456, 462 (2d Cir.1995); *United States v. Malpiedi*, 62 F.3d 465, 469–70 (2d Cir.1995). The question here is whether the conflict faced by Stacey Richman—which is grounded in the fact that attorneys associated with the Richman Firm represented Blassingame in a criminal matter twenty years ago—is an unwaivable actual conflict.

■ The Court of Appeals has explained that, in contrast to the conflicts in *Fulton* and *Schwarz*, "lesser conflicts, such as an attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable. Although such a conflict might require a defendant to abandon a particular defense or line of questioning, he can be advised as to what he must forgo...." *Perez*, 325 F.3d at 127 (internal citations omitted).

In *United States v. Blount*, 291 F.3d 201 (2d Cir.2002), a criminal appeal from a conviction in which no *Curcio* hearing was held, the Court of Appeals addressed facts that bear striking resemblance to those in this case. In *Blount*, the district court was apprised on the first day of trial that an attorney in the defense attorney's firm represented a government witness in an unrelated criminal case in Connecticut state court. *Id.* at 209–10. No *Curcio* hearing was held, and the trial went forward, resulting in a conviction of the defendant. The defendant argued on appeal that his Sixth Amendment right to effective assistance of counsel had been violated by the conflict of interest that resulted from the defense attorney's firm's representation of the witness. *Id.* at 210. Relying on *Mickens*, the Court of Appeals

rejected the defendant's claim, explaining as follows:

In the present case, the only potential conflict shown in the record arose from the fact that Dow, a member Bloss's firm, had represented the government's witness Bivens in an unrelated matter. Bloss [the defense counsel] himself had not represented Bivens, and Bloss informed the court that he had never had any substantive conversations with Bivens; indeed, Bloss had not even recognized Bivens's name. The trial record plainly indicates that Bloss did not perceive any conflicting loyalties on his part; and by the time Bivens testified, he had replaced Dow with new counsel.

Streater [the appellant] has not shown that Dow's prior representation of Bivens had any effect on Bloss's performance. For example, he has not suggested that Bloss had any information from, or with respect to, Bivens that could have been used in defense of Streater; nor has he proffered evidence of any plausible alternative defense that Bloss failed to present because of Dow's past representation of Bivens. The record shows that Bloss's cross-examination of Bivens was vigorous and thorough, and we see no basis whatever on which it could be concluded that Dow's prior representation of Bivens had any adverse effect on Bloss's representation of Streater. Accordingly, we reject Streater's Sixth Amendment claim.

*Blount*, 291 F.3d at 212. On the facts of *Blount*, the Court of Appeals determined that the conflict of interest faced by the attorney had not resulted in a violation of the defendant's Sixth Amendment right to effective assistance of counsel. That determination lends support to the conclusion that the possible conflict of interest relevant to this case is not the type of conflict that would be unwaivable under *Fulton* or *Schwarz.*

Indeed, the facts of this case present even less basis for a finding of a disabling conflict than did the facts in *Blount.* The Richman Firm represented Blassingame in an unrelated criminal matter twenty years ago, in contrast to the concurrent representation by the firm in *Blount.* Stacey Richman has never represented Blassingame, and she continues to maintain that she will not be inhibited in cross-examining Blassingame on the full scope of his criminal activities. The testimony and the submissions of the parties credibly establish that the Richman Firm has no files on Blassingame and no other possible repository of his confidences or secrets.

The Government relies on *United States v. Oberoi*, 331 F.3d 44 (2d Cir.2003). In *Oberoi*, the Federal Public Defender's Office for the Western District of New York ("Defender") moved to withdraw as counsel for the defendant when the Defender learned that "a long-term and current client of the office would testify" against the defendant. *Id.* at 45. The district court denied the motion after the witness consented to the use of his confidences and secrets by the Defender during cross-examination. The Defender appealed the district court's order on the grounds that the Defender risked violating the New York Code of Professional Responsibility despite the witness's consent to use of his confidences and secrets and that the Defender would continue to have "divided loyalties." *Id.* at 47. The Court of Appeals held that "if forcing an attorney to continue representation will cause a violation of the Code of Professional Responsibility and possibly subject the attorney to sanctions, it will be an abuse of discretion not to grant the motion to withdraw." *Id.* at 47–48. After canvassing the relevant authorities on the issue of the potential ethical violation, the court concluded that

the Defender probably could have proceeded with the representation, particularly in view of the waiver of any confidences or secrets by the witness. *Id.* at 49. Nevertheless, the court concluded that the Defender's stricter interpretation of the ethical rules was not an unreasonable interpretation and observed that "an attorney who expresses ethical reservations about cross-examining a former client using his secrets and confidences, even with client consent, acts in the highest tradition of the profession." *Id.* at 51.

■ The facts of *Oberoi* are plainly distinguishable from those in this case. In *Oberoi*, the defense attorney made a motion to withdraw on the grounds that the attorney faced an ethical dilemma severe enough that the attorney's performance at trial would be affected. The attorney in *Oberoi* also faced "divided loyalties" because the Defender's office currently represented the witness that the defense attorney would have to cross-examine at trial. In this case, Stacey Richman has repeatedly represented that she does not face any ethical dilemma in her cross-examination of Blassingame. She is perfectly prepared to cross-examine Blassingame thoroughly on all subjects. Neither she nor anyone in her firm has any confidences or secrets that would in any way inhibit a vigorous cross-examination of Blassingame. Nor does Stacey Richman feel that her loyalties could be divided at trial between Armaza and Blassingame. Moreover, the Court of Appeals has made clear that "[w]here the right to counsel of choice conflicts with the right to an attorney of undivided loyalty, the choice as to which right is to take precedence must generally be left to the defendant and not be dictated by the government." *Perez*, 325 F.3d at 125.

The Government nonetheless contends that the New York Code of Professional Responsibility presents an ethical conflict that should prevent the Richman Firm from proceeding in this case. The Government contends that even if the Court determines that any potential conflict could be waived by Aramaza at a *Curcio* hearing, the Court should decline to accept such a waiver. The Government notes that "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S at 160, 108 S.Ct. 1692.

In particular, the Government maintains that New York Disciplinary Rule 5–108 applies. DR 5–108 covers conflict-of-interest issues related to former and present clients and provides:

> (a) . . . a lawyer who has represented a client in a matter shall not, without the consent of the former client after full disclosure:

> (1) Thereafter represent another person *in the same or a substantially related matter* in which that person's interests are materially adverse to the interests of the former client.

> (2) Use any confidences or secrets of the former client except as permitted by DR 4–101(c) *or when the confidence or secret has become generally known.* (Emphasis added.)

DR 4–101(a) defines "confidence" as the "information protected by the attorney-client privilege under applicable law." It defines "secret" as "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." DR 4–101(b) states:

> Except when permitted under 4–101(c), a lawyer shall not knowingly:

> (1) Reveal a confidence or secret of a client.

> (2) Use a confidence or secret of a client to the disadvantage of the client.

(3) Use a confidence or secret of a client for the advantage of the lawyer or of a third person, unless the client consents after full disclosure.

Subsection c of DR 4–101 allows a lawyer to "reveal ... [c]onfidences or secrets with the consent of the client or clients affected, but only after a full disclosure to them."

 It is unlikely that the Richman Firm would violate any ethical rules by representing Armaza in this case. There is also no manner in which the Richman Firm's representation would cast any doubt on the integrity of the trial process in this case. The substantial relationship test codified in DR 5–108 draws from the seminal case of *T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265 (S.D.N.Y.1953), in which Judge Weinfeld stated that in order for former clients of an attorney to obtain the disqualification of the attorney when the attorney appears in an adverse position in a subsequent representation:

> [T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation.

*T.C. Theatre Corp.*, 113 F.Supp. at 268. The Court of Appeals has affirmed that *T.C. Theatre Corp.* provides the basis for the approach courts are to take when determining whether an attorney should be disqualified from a matter because of a representation of an adverse party in a substantially related matter. An attorney may be disqualified in such circumstances if:

(1) the moving party is a former client of the adverse party's counsel;

(2) there is a substantial relationship between the subject matter of the counsel's prior relationship of the moving party and the issues in the present lawsuit; and

(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir.1983). The objective of the disqualification rule is to "preserve the integrity of the adversary process." *Id.* (internal quotation marks and citation omitted). The substantial relationship test is strictly applied to avoid depriving clients of their chosen counsel, and the moving party must demonstrate that the relationship between the actions is "patently clear" or the issues involved are "identical" or "essentially the same." *Gov't of India v. Cook Indus.*, 569 F.2d 737, 740 (2d Cir.1978). An attorney's access to privileged information is sufficient to warrant disqualification, because there is a presumption that access to privileged information will be accompanied by actual possession of such information, and preservation of the integrity of the adversary process dictates that such confidences not be used by an adversary. However, this presumption may be rebutted and disqualification avoided if an attorney can prove that he or she does not possess privileged information. *See Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 754–56 (2d Cir.1975), overruled on other grounds by *Armstrong v. McAlpin*, 625 F.2d 433 (2d Cir.1980), *vacated and remanded*, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981).

 In this case, the Richman Firm has sufficiently rebutted any argument

that it now possesses any of Blassingame's confidences or secrets. There is no realistic danger that there are confidences or secrets "which are presently forgotten but could, upon prompting, be summoned again into consciousness." *United States v. Uzzi,* 549 F.Supp. 979, 982 (S.D.N.Y. 1982).

Moreover, it is important to recognize that "there is another factor which should go into the balance that mitigates the concern that some 'secret'" of a cooperating witness imparted to a former attorney might be "inadvertently disclosed during the cross-examination." *United States v. Reynoso,* 6 F.Supp.2d 269, 273 (S.D.N.Y. 1998). As Judge Martin observed in *Reynoso,* cooperating witnesses are routinely required by the Government to disclose truthfully and completely all information regarding matters about which the Government questions them; indeed, Blassingame disclosed his prior criminal record in response to questioning by the Government on this present motion. Therefore, there is little reason to believe that some confidence or secret of Blassingame's will be disclosed on cross-examination:

> No one familiar with the operations of the United States Attorney's Office would doubt that prosecutors with whom [the witness] is cooperating have questioned him as thoroughly as [the former attorney], if not more, concerning his criminal activities and other wrongful conducts that might impeach his credibility. Realistically, one would seriously doubt that there is any relevant fact about Vasquez which [the former attorney] ever knew that has not been thoroughly discussed with the prosecutors. Indeed, anyone who has observed trials involving a cooperating witness knows that on direct examination the Government invariably elicits testimony concerning any bad act of the witness that is liable to be the subject of cross-examination.

*Id.* Blassingame has very likely disclosed to the Government all relevant information pertaining to his past criminal conduct. Therefore, it is implausible that any of his confidences or secrets will be disclosed during cross-examination by Stacey Richman. In any event, Ms. Richman has persuasively shown that she herself does not possess any of Blassingame's confidences or secrets, and that there is no conceivable way that she could learn them from the Richman Firm's files or any other source. She will not be inhibited in her cross-examination of Blassingame.

### Conclusion

For the reasons explained above, the possible conflict of interest in the Richman Firm's representation of Armaza because of its prior representation of Blassingame is not an actual conflict that cannot be waived by Armaza following a *Curcio* hearing. The Court will therefore proceed to conduct a *Curcio* hearing.

**SO ORDERED.**