12-1116-cr
United States of America v. Barton

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————

August Term, 2012

(Argued: December 21, 2012    Decided: April 2, 2013)

Docket No. 12-1116-cr

———————————

UNITED STATES OF AMERICA,

*Appellee*,

— v. —

JOHN ANTHONY BARTON,

*Defendant*,

ROBERT G. SMITH,

*Appellant*.[*]

———————————

B e f o r e :

CALABRESI, SACK, LYNCH, *Circuit Judges*.

———————————

Robert G. Smith, an Assistant Federal Defender for the Western District of New

York, challenges the denial of his motion to withdraw from representing defendant John

---

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

Anthony Barton in the underlying criminal case. Where the defendant, having been informed of his right to counsel, refused to recognize Smith as his attorney, stated that he did not wish to have appointed counsel, and made no attempt to establish his financial eligibility for appointed counsel, the district court abused its discretion by forcing Smith to continue the representation.

REVERSED AND REMANDED.

————————————

ROBERT G. SMITH, Assistant Federal Defender (Jay S. Ovsiovitch, of counsel, *on the brief*), *for* Marianne Mariano, Federal Public Defender for the Western District of New York, Rochester, N.Y., *for Appellant*.

ELIZABETH D. COLLERY, Attorney, Appellate Section, U.S. Department of Justice, Criminal Division, Washington, D.C. (Lanny A. Breuer, Assistant Attorney General; John D. Buretta, Deputy Assistant Attorney General, U.S. Department of Justice, Criminal Division, Washington, D.C.; and William J. Hochul, Jr., United States Attorney for the Western District of New York, Buffalo, N.Y., *on the brief*), *for Appellee*.

————————————

GERARD E. LYNCH, *Circuit Judge*:

Robert G. Smith, an Assistant Federal Defender for the Western District of New York, moved to withdraw from representing John Anthony Barton, a defendant in a criminal action pending in the United States District Court for the Western District of New York (Charles J. Siragusa, *Judge*). In this interlocutory appeal, Smith challenges the denial of that motion. He argues that because Barton refuses to communicate with him,

requiring him to continue the representation will cause him to violate his ethical duty to consult with his client. We do not reach the merits of Smith's argument based on his professional responsibility as an attorney because we conclude on other grounds that the denial of the motion exceeded the limits of the district court's discretion. The defendant, having been informed of his right to counsel, stated that he did not wish to have appointed counsel, made no attempt to establish his financial eligibility for appointed counsel under the Criminal Justice Act of 1964 ("CJA"), 18 U.S.C. § 3006A, and refused to recognize Smith as his attorney. Under these circumstances, Smith's appointment was improper from the outset, and he may not be required to continue serving as Barton's attorney.

**BACKGROUND**

Barton was charged by criminal complaint on June 29, 2011 with conspiring to manufacture, distribute or dispense, or possess with intent to manufacture, distribute or dispense, methamphetamine, in violation of 21 U.S.C. § 846, and with possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) and (2). Assistant Federal Defender Elizabeth Switzer attended Barton's initial appearance on July 14, 2011 before Magistrate Judge Marion W. Payson. Barton had not completed a financial affidavit, and he informed the court that he wished to obtain private counsel. He asked for an adjournment of several days in which to do so. The court granted the adjournment, but reminded Barton that if he was unable to retain counsel, Switzer could be appointed to represent him as long as he qualified financially. Barton's next three appearances before Judge Payson occurred on July 19, August 3, and August

3

16. Switzer was again in attendance, even though Barton had still not completed a financial affidavit. Barton explained that he had tried, but been unable, to retain counsel. He again asked for adjournments, which were granted in each instance.

On September 7, 2011, Barton filed a pro se motion to dismiss the complaint against him for lack of jurisdiction. He argued, among other things, that he was not properly named in the complaint, which was made out against "JOHN BARTON" and not "John Anthony Barton"; that he was legally allowed to possess both marijuana and methamphetamine to treat narcolepsy caused by a head injury he suffered in connection with a car accident; and that New York State is a sovereign territory into which the laws of the United States do not extend.

The following week, on September 15 and 16, two more conferences were held before Judge Payson. Switzer again attended, but she expressed her hesitation to act as Barton's counsel, given his expressed desire to retain counsel. The court noted that Barton still had not completed a financial affidavit and asked whether he wanted to do so. Barton said he did not and explained that he was still seeking private counsel. Finally, in light of Barton's seemingly confused oral representations to the court and his pro se filing, including its reference to a head injury, Judge Payson expressed concern about Barton's competence. She ordered that Barton undergo a psychological evaluation and asked Switzer to "remain in the case not as appointed counsel, but to assist Mr. Barton," at least until Barton could retain counsel.

4

Switzer was not present for Barton's next appearance on November 23, 2011, as she had by that time left the Federal Defender's office. Smith appeared in her place. Judge Payson commenced the proceeding by reviewing a report prepared by a forensic psychologist, which concluded that Barton was competent to stand trial. When Judge Payson asked Barton if he had seen the report, he ignored her question, referring instead to his motion to dismiss the complaint. Barton would answer no further questions, including questions about his efforts to retain a lawyer. Judge Payson decided to give Barton two additional weeks to find an attorney, following which, she said, she would appoint Smith to represent him. Barton's only response was, "I object."

The next appearance, Barton's ninth, occurred on December 7, 2011. Once again, Barton would not participate other than to refer to his motion to dismiss and, periodically, to object. Judge Payson explained to Barton, as she had several times previously, that he had the right to be represented by an attorney and that he could hire an attorney of his own choosing, have an attorney appointed for him, or represent himself. Because Barton had stated in previous appearances that he wished to retain counsel, Judge Payson concluded that he had not invoked his right to self-representation. She also expressed reluctance to find that he had waived his right to counsel, even though he had both rejected the offer of appointed counsel and failed to retain private counsel. Judge Payson therefore appointed Smith to represent Barton, "because Mr. Barton has not told me that he has other counsel whom he would like to represent him." Smith observed that the case presented "kind of a unique situation with [the] public defender[s]," but he acknowledged

5

the appointment and said that he would "advise Mr. Barton and be ready to proceed. The following day, December 8, Judge Payson issued a report and recommendation that Barton be found competent to stand trial, and another that his pro se motion to dismiss be denied.

On December 13, the government filed a six-count indictment, charging Barton with narcotics conspiracy, in violation of 21 U.S.C. § 846; unlawfully manufacturing methamphetamine, possessing methamphetamine with intent to distribute, and possessing marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a); using premises to manufacture, distribute and use a controlled substance, in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2; and possessing firearms in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1) and (2). Barton was arraigned on December 21, 2011. When Smith entered a plea of not guilty, Barton objected. The plea was nonetheless entered pursuant to Fed. R. Crim. P. 11(a)(4), which directs that a plea of not guilty be entered when a defendant "refuses to enter a plea."[1]

On January 3, 2012, Smith moved for leave to withdraw as counsel. According to Smith, Barton had refused to communicate or meet with him since September, rendering it impossible for Smith to ascertain and represent his interests. District Judge Charles J. Siragusa held a conference on January 11. Barton began the proceeding by stating that

---

[1] On January 31, 2012, the government superseded the indictment in order to add seven counts against a co-defendant. The charges against Barton remained the same as in the December 12, 2011 indictment. On February 13, the court entered a plea of not guilty on the superseding indictment on Barton's behalf, again pursuant to Rule 11(a)(4).

6

Smith was not his attorney and reiterating his desire to retain counsel. Judge Siragusa explained to Barton, as had Judge Payson, that he could hire a private attorney of his choice, accept Smith as his appointed lawyer, or proceed pro se. He also provided extensive warnings about the risks of self-representation.

Judge Siragusa at first mistakenly assumed that Judge Payson had determined that Barton could not afford to hire lawyer and was therefore entitled to the assistance of court-appointed counsel. Nonetheless, he asked Barton whether he had access to at least $15,000 or $20,000, which he estimated to be the cost of a private attorney. Barton said that he did, and the judge explained that, if Barton could afford his own lawyer, he was not entitled to appointed counsel. Barton agreed and informed the court that he had not completed an affidavit establishing his entitlement to a court-appointed lawyer. Barton asked, once again, for time to retain counsel, as he did not wish to be represented by Smith or to proceed pro se. The court agreed to give Barton thirty days to find an attorney. In the meantime, it held Smith's application to withdraw in abeyance, declining to relieve him until Barton had secured replacement counsel. On January 15, the district court adopted Judge Payson's December 8 recommendations, finding Barton competent to stand trial and denying the motion to dismiss the criminal complaint.

On February 13, Barton again appeared before Judge Payson. As previously, he would not participate except to invoke his motion to dismiss. Judge Payson determined that Barton had neither retained counsel nor expressed an unequivocal desire to represent himself and concluded that Smith would therefore have to remain in the case as Barton's

7

attorney. Accordingly, Judge Payson denied Smith's motion to withdraw. However, she also explained to Barton that if he continued not to cooperate with Smith or the court, she might find that he had waived his right to the assistance of counsel and require him to proceed pro se.

At the next conference, on March 5, Judge Payson again outlined Barton's three options with respect to the assistance of counsel. But she also noted that he would not be entitled to one of these options – appointment of counsel – if he did not establish financial eligibility. As Judge Payson observed, Barton had still not completed a financial affidavit. She presented him with a blank form affidavit, instructing him to fill it out and return it if he wished to be assigned counsel. She said if he submitted the form within two weeks, Smith would continue to represent him unless he established that he could not work with Smith and needed replacement appointed counsel. If he did not return the form or otherwise establish his eligibility for appointed counsel, however, Judge Payson would terminate Smith's appointment and Barton would be required to retain a lawyer or proceed pro se. As had Judge Siragusa, Judge Payson warned Barton of the dangers of self-representation. Barton acknowledged these statements only by citing his motion to dismiss and objecting.

Before two weeks had passed, on March 12, another conference was held before Judge Siragusa. The court warned Barton that he was in danger of being required to represent himself. Specifically, the court noted its lack of authority to appoint a public defender without first making a finding of financial eligibility. Nonetheless, by order

8

dated March 16, 2012, the district court affirmed Judge Payson's order denying Smith's motion to withdraw. The court reasoned that Barton had never expressed a desire to represent himself, and that "representation by counsel . . . should be the standard, not the exception." United States v. Barton, No. 11-CR-6201, 2012 WL 925958, at *10 (W.D.N.Y. March 16, 2012).

On March 19, Smith filed a notice of appeal from the March 16 interlocutory order. He argues that the district court abused its discretion in denying his motion to withdraw. According to Smith, requiring him to continue representing Barton will force him to violate his professional obligations, as an attorney has a duty to consult with his client, something that Barton refuses to allow.

**DISCUSSION**

**I.     Jurisdiction**

We have jurisdiction to consider Smith's interlocutory appeal under the collateral order doctrine, which applies to an "interlocutory order [that] . . . (1) conclusively determine[s] the disputed question, (2) resolve[s] an important issue completely separate from the merits of the action, and (3) [is] effectively unreviewable on appeal from a final judgment." Schwartz v. City of New York, 57 F.3d 236, 237 (2d Cir. 1995), citing Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978). A district court's denial of an attorney's motion to withdraw as counsel "satisfies each of the three requirements," and is therefore immediately appealable. Whiting v. Lacara, 187 F.3d 317, 320 (2d Cir. 1999); accord, United States v. Oberoi, 331 F.3d 44, 47 (2d Cir. 2003).

9

## II.   Merits

We review a district court's order denying an attorney's motion to withdraw for abuse of discretion.  United States v. O'Connor, 650 F.3d 839, 851 (2d Cir. 2011).  Ordinarily, we ask whether "forcing an attorney to continue representation will cause a violation of the Code of Professional Responsibility and possibly subject the attorney to sanctions."  Oberoi, 331 F.3d at 47.  However, that inquiry is appropriate where an attorney seeks to withdraw after having been properly appointed or having otherwise appeared.  Cf. O'Connor, 650 F.3d at 851-52 (distinguishing between an attorney seeking to avoid appointment in the first place and one seeking to withdraw following proper appointment).  In this case, we conclude that Smith was never properly appointed.  He seeks to terminate an assignment that Barton never requested and has refused to recognize, and for which the district court failed to establish a statutory basis.

The CJA authorizes district courts to appoint publicly financed counsel "for any person financially unable to obtain adequate representation."  18 U.S.C. § 3006A(a).  Pursuant to the CJA, whenever a defendant charged with a felony, such as Barton, appears without counsel,

> the United States magistrate judge or the court shall advise the person that he has the right to be represented by counsel and that counsel will be appointed to represent him if he is financially unable to obtain counsel.  Unless the person waives representation by counsel, the United States magistrate judge or the court, if satisfied after appropriate inquiry that the person is financially unable to obtain counsel, shall appoint counsel to represent him.

10

Id. § 3006A(b).  Thus, before appointing counsel, a judge must first conduct "an 'appropriate inquiry' into the defendant's financial eligibility."  United States v. Parker, 439 F.3d 81, 93 (2d Cir. 2006).  "While we review the district court's decision regarding financial eligibility under the 'clearly erroneous' standard, we review the adequacy and manner of the district court's inquiry *de novo*."  Id. at 93 n.12 (citations omitted).

Here, the district court never concluded that Barton was eligible for the appointment of counsel.  It was unable to do so because Barton declined to complete a financial affidavit or present any indication that he could not afford a lawyer.  To the contrary, he represented that he had the financial means to retain counsel.  "When requesting the appointment of counsel, the burden is on the defendant to show that he is unable to afford representation . . . ."  United States v. O'Neil,118 F.3d 65, 74 (2d Cir. 1997).

We do not suggest that a defendant's failure to submit a financial affidavit or otherwise furnish evidence of his eligibility relieves a district court of its responsibility to inquire into the defendant's financial status.  See United States v. Gravatt, 868 F.2d 585, 588-89 (3d Cir. 1989) ("[T]he defendant's burden [of establishing eligibility] does not relieve the district court of its responsibility, once on notice of the defendant's inability to retain private counsel, to make further inquiry into the defendant's financial condition," and "the court may not adopt an unconditional requirement that the defendant complete [a financial affidavit] before his application for appointment of counsel will be considered.") (internal quotation marks omitted); United States v. Moore, 671 F.2d 139, 141 (5th Cir.

1982) (district court abused its discretion when it "improperly demanded that the defendant fill out a [financial affidavit form] before the court would further consider the appointment of counsel"). Here, however, the district court *did* inquire into Barton's financial status, and Barton asserted that he was financially able to retain counsel.

Moreover, Barton did not request counsel in the first place and in fact emphatically declined to have a lawyer appointed. The district court repeatedly informed Barton of his right to the assistance of counsel and invited him to complete an affidavit. He explicitly told the court that he did not want to do so.[2] Barton's failure to submit an affidavit was not because of oversight, incapacity, or a specific grievance with the information requested. He did not object to filing a particular form of affidavit. Rather, Barton declined to ask for a court-appointed lawyer because he did not want one. In these circumstances, Smith should not have been appointed.

---

[2] For example, the following exchange took place on September 15, 2011:

JUDGE PAYSON: You may be entitled to have counsel appointed for you if you're financially unable to hire an attorney, and all you have to do is fill out a form and give me some information about your finances and I can determine that you qualify financially and appoint a lawyer for you. Is that something you'd like me to do?

BARTON: No.

12

After the appointment, Barton continued to insist that Smith was not his lawyer.[3] He consistently maintained that he wanted to retain private counsel. He told the court that he had funds to hire a lawyer, and he again made clear that his failure to establish his eligibility for appointed counsel was deliberate.[4] Accordingly, when Smith moved to withdraw, he was asking the court to terminate a relationship that should not have been formed in the first place, and that neither the attorney nor the client wished to maintain.

---

[3] On January 11, 2012, more than a month after Smith was appointed, Barton appeared before Judge Siragusa, who asked him, "[A]re you appearing with your attorney, Mr. Smith?" Barton replied, "No, I've never – this isn't my attorney."

[4] The following exchange also took place at the January 11 appearance:

| JUDGE SIRAGUSA: | [D]id Judge Payson determine that he didn't have the wherewithal to hire his own attorney? |
| BARTON: | No, I never filled out a Financial Affidavit or anything else. |
| JUDGE SIRAGUSA: | Here is what I'm explaining to you. If you have the money to get your own lawyer, then you got to pay for your own lawyer, you don't get an assigned lawyer. |
| BARTON: | Exactly. |
| | . . . . |
| JUDGE SIRAGUSA: | . . . [I]f you come back and you got a lawyer, all is good, we'll proceed. If you don't, then she may assign – and she determines you got the money and you don't want to spend it, she is not going to continue Mr. Smith's assignment. Do you understand that? |
| BARTON: | Right. |
| JUDGE SIRAGUSA: | . . . [S]he can only assign somebody if you don't have the funds. Okay? Understand that? |
| BARTON: | Yes. |

13

We can think of no justification for requiring these unwilling individuals to continue their unauthorized relationship. Accordingly, the district court abused its discretion when it denied Smith's motion to withdraw.

In denying Smith's motion, the district court explained that Barton had "never expressed any desire to represent himself," and that "representation by counsel . . . should be the standard." Barton, 2012 WL 925958, at *10. Because a defendant is greatly benefitted by the assistance of counsel, "in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits." Faretta v. California, 422 U.S. 806, 835 (1975) (internal quotation marks omitted). In other words, a decision to waive the right to counsel must be voluntary and unequivocal. Williams v. Bartlett, 44 F.3d 95, 99-100 (2d Cir. 1994). "This does not mean, however, that a court may not, under certain circumstances, require the defendant to select from a limited set of options a course of conduct regarding his representation." McKee v. Harris, 649 F.2d 927, 931 (2d Cir. 1981). Specifically, a court may force a defendant, "in the interest of orderly procedures, to choose between waiver and another course of action as long as the choice presented to him is not constitutionally offensive." Id. (quotation marks omitted).

Here, Barton was extensively and repeatedly advised by the magistrate judge and the district judge that he could hire a lawyer, represent himself, or apply for the assistance of publicly funded counsel. He selected the first option and asked the court to stay proceedings until he had retained counsel. When several months passed and Barton had not secured counsel, both judges warned him that he would be required to proceed pro se

14

if he neither retained a lawyer nor applied to have one appointed. By that time, Judge Siragusa had explained the benefits of counsel and cautioned Barton about the dangers of self representation; Judge Payson had echoed these warnings. Because Barton was fully advised of his right to counsel, the importance of this right, and his options for exercising it, but did not hire a lawyer and refused to have one appointed, the district court was authorized to treat his conduct as a knowing, intelligent and voluntary waiver of his right to counsel, and to require him to proceed without representation if he failed to obtain counsel within a reasonable time.

Of course, Barton is free to change his mind. Should he succeed in hiring an attorney following remand, that attorney may file an appearance. Alternatively, if Barton asks for appointed counsel, and if he qualifies financially, the district court must appoint counsel. What the district court may not do, however, is foist an unwilling attorney upon an unwilling defendant, who has actively refused the appointment of counsel and declined to demonstrate his financial eligibility under the CJA.

**CONCLUSION**

For the reasons stated above, the district court abused its discretion when it denied Smith's motion to withdraw. We therefore REVERSE the district court's March 16, 2012 order and REMAND the case for proceedings consistent with this opinion.