**UNITED STATES of America, Plaintiff,**

v.

**Gwynne JUDGE, Defendant.**

**Crim. No. 85–1914.**

United States District Court,
D. Hawaii.

Jan. 9, 1986.

Mark J. Bennett, Asst. U.S. Atty., Daniel A. Bent, U.S. Atty., Honolulu, Hawaii, for plaintiff.

Michael R. Levine, Federal Public Defender, Benjamin B. Cassiday III, Asst. Federal Public Defender, Honolulu, Hawaii, for defendant.

## ORDER AFFIRMING MAGISTRATE

SAMUEL P. KING, Senior District Judge.

On November 20, 1985, Magistrate Bert S. Tokairin entered an order denying the government's motion to disqualify the Office of the Federal Public Defender ["Federal Defender"] from representing the defendant in this action. The government appeals from that decision.

The government's concern stems from the Federal Defender's former representation of a client who will be a crucial prosecution witness in the current case. In 1984, Assistant Federal Public Defender Yvonne Chotzen represented a client named Philip Henri at his guilty plea and sentencing. Assistant Federal Public Defender Benjamin Cassiday has been appointed to represent the defendant in the current, unrelated case. The government expects to call Philip Henri as a witness at defendant's trial. Because Philip Henri's credibility will be at issue, the government is concerned that the Federal Defender will use confidential information gained from its former representation of Henri to discredit his testimony at trial. In addition, the government contends that regardless of any actual conflict of interest, the appearance of impropriety inherent in such a situation warrants disqualification.

The government's position that an actual conflict exists is valid only if all attorneys employed by the Federal Defender are viewed as working for the same "law firm," and therefore as having access to the collective confidences of all of the "firm's" clients. The government relies on Model Code of Professional Responsibility DR 5-105(D), which provides:

> If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment.

While valid as a general proposition, the vicarious disqualification provision of DR 5-105(D) has been questioned in the context of large law firms and government departments, where there is less reason to presume that confidential information possessed by one attorney is shared by all others in the same office. *See, e.g.,* Comment, The Chinese Wall Defense to Law Firm Disqualification, 128 U.Pa.L.Rev. 677 (1980). Recognizing that indiscriminate application of DR 5-105(D) would defeat other policy objectives, the Ethics Committee of the ABA has tempered the rule as applied to government offices. It has opined that it is unnecessary to disqualify an entire government legal department where appropriate measures are taken to screen department attorneys with confidential information from involvement in the particular case. ABA Comm. on Ethics & Professional Responsibility, Formal Op. 342 (1975), *reprinted in;* 62 A.B.A.J. 517 (1976).

■ The government contends that the more liberal approach engendered by the ABA Opinion applies only to government prosecution offices, not to offices such as the Federal Defender. In support of its position, the government points out that public defenders are held to the same standards of professional ethics and competency as are private attorneys. This argument, of course, proves too much, for prosecuting attorneys are also expected to uphold the standards of the general profession. In fact, because of their unique position of public trust, prosecuting attorneys are held to standards of conduct more stringent than those applied to private lawyers. *See, e.g.,* Model Rules of Professional Conduct Rule 3.8 (1983); Model Code of Professional Responsibility EC 7-13, EC 7-14, DR 7-103, DR 7-107 (1979).

■ Moreover, the presumption of shared confidences embodied in DR 5-105(D) is a rebuttable one. *Novo Terapeutisk, Etc. v. Baxter Travenol Laboratories,* 607 F.2d 186, 196-97 (7th Cir.1979) (en

banc). Here, the Magistrate found that the measures taken by the Federal Defender to screen Benjamin Cassiday from persons or records involved in the Philip Henri case were adequate to prevent any misuse of confidential information. This finding is neither clearly erroneous nor contrary to law.

It is true that some, including Philip Henri, may detect an appearance of impropriety in the Federal Defender's attempt to impeach a former client. Nevertheless, as Judge Feinberg has so aptly stated, "when there is no claim that the trial will be tainted, appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases." *Board of Education of New York City v. Nyquist*, 590 F.2d 1241, 1247 (2d Cir.1979).

 The court finds that Judge Feinberg's observation has particular force in a criminal case, as here, where the defendant's choice of counsel should be accorded great deference. The Magistrate conducted an evidentiary hearing in which the defendant was fully informed as to the possible conflicts involved in this case. The defendant made a knowing, intelligent and voluntary waiver on the record of his right to conflict-free representation. Under these circumstances, defendant's choice of counsel should be respected.

The government has also expressed concern for the rights of Philip Henri who may be required to testify to matters which could jeopardize his probationary status. While Mr. Henri's rights possibly could be affected by any admissions he makes while testifying, it is the defendant's rights that primarily are at stake in these proceedings. Nevertheless, should Mr. Henri require representation under the Criminal Justice Act, the court can appoint a private-practice panel attorney to protect his interests.

Accordingly, the decision of the Magistrate denying the government's disqualification motion is AFFIRMED.

IT IS SO ORDERED.