UNITED STATES of America,

v.

**Ramirez REYNOSO, Defendant.**

No. 97 CR. 610 JSM.

United States District Court, S.D. New York.

June 15, 1998.

Roman E. Darmer II, Assistant United States Attorney, Southern District of New York, New York City, for the Government.

Roland Thau, The Legal Aid Society, Federal Defender Division, Southern District of New York, New York City, for Defendant.

---

Neil B. Checkman, Law Offices of Neil B. Checkman, New York City, for Donato Vasquez.

## OPINION AND ORDER

MARTIN, District Judge.

The issue in this case is whether an attorney employed by the Federal Defender Division of the Legal Aid Society should be disqualified from representing at trial a defendant whom he has represented for approximately a year, because four years ago another lawyer in the Federal Defender Division represented a potential Government witness in a different criminal case.

Since the outset of these proceedings, Roland Thau, an attorney in the Federal Defender Division has represented Ramirez Reynoso. Count Two of the indictment charges Reynoso with violating the Hobbs Act, 18 U.S.C. § 1951, in that he and others committed an armed robbery and took "approximately $2,600, which included the proceeds of a travel agency doing business in the Bronx, New York, and thereby obstructed, delayed and affected commerce . . . ." For at least six months, Thau has been seeking discovery from the Government in an attempt to establish that the funds taken in the robbery were not proceeds of the travel agency but were personal funds of the victims and that these funds had their source in the narcotics business conducted by Donato Vasquez, who was the husband of one of the victims and is the father of the other. It now appears that Vasquez, who pleaded guilty to a charge of conspiring to distribute cocaine, will be a witness at Reynoso's trial.

The Government, later joined by Vasquez, moved to disqualify Thau from acting as Reynoso's trial counsel because Leonard Joy of the Federal Defender Division represented Vasquez from December 1993 to May 27, 1994 in connection with his plea of guilty to a charge relating to the cloning of cellular telephones. Thau has represented to the Court, and his representation is not questioned, that he had no involvement in the prior representation of Vasquez, that Joy has almost no recollection of the Vasquez representation, that the Federal Defender Division's files relating to Vasquez have been sent to storage and are, therefore, not available to him, and that he and Joy have had no discussion concerning the details of Joy's representation of Vasquez.

Thau has also stated that he intends to cross-examine Vasquez concerning his involvement in the cloning of cellular phones in an attempt to show that it was a part of his ongoing narcotics activity from which he derived substantial income.

The Government's position is that since Joy would be disqualified from representing Reynoso because he would not be permitted to cross-examine his former client Vasquez concerning the very matter that was the subject of his representation, Thau, Joy's colleague in the Federal Defender Division, should also be disqualified. There is, no question that Joy could not represent Reynoso. *See, e.g., United States ex rel. Stewart v. Kelly,* 870 F.2d 854 (2d. Cir.1989), *United States v. Levy,* 25 F.3d 146, 152–53 (2d Cir. 1994). Moreover, all members of a private law firm have been disqualified in similar circumstances. *See, e.g., United States v. Uzzi,* 549 F.Supp. 979 (S.D.N.Y.1982), *United States v. Falzone,* 766 F.Supp. 1265 (W.D.N.Y.1991). However, given the particular circumstances of this case and the unique nature of the Federal Defender Division makes it inappropriate to disqualify Thau in this case.

At the outset of the analysis, it is appropriate to note that the Second Circuit has clearly stated that:

> The solution to this clash between a defendant's Sixth Amendment right to counsel and the same defendant's right to a fair trial is a balancing of interests that is committed to the discretion of the trial judge, who has "broad latitude" in this matter. *Wheat v. United States,* 486 U.S. 153, 163, 108 S.Ct. 1692, 1699, 100 L.Ed.2d 140 (1988). There is a presumption in favor of a defendant's choice of counsel, but this may be overcome "by a showing of a serious potential for conflict." *Id.; see also United States v. Arrington,* 867 F.2d 122, 128 (2d Cir.1989) (right to counsel of choice not absolute). In balancing what can be competing interests of the Sixth

Amendment, the trial court has "an independent duty to ensure that criminal defendants receive a trial that is fair." *Wheat,* 486 U.S. at 159, 108 S.Ct. at 1697; *see also United States v. Scopo,* 861 F.2d 339, 344 (2d Cir.1988).

*United States ex rel. Stewart v. Kelly,* 870 F.2d 854, 856 (2d Cir.1989).

Here, the balancing of interests supports upholding Reynoso's right to have Thau continue to represent him.

First as noted above, Thau has represented Reynoso from the outset. He has conducted a thorough investigation of the facts and has developed a unique theory of defense to the charge.

Second, and most important, in the circumstances of this case, it does not make sense to apply to the Federal Defender Division, the same standards for disqualification that would apply to a private law firm.

Disciplinary Rule 5–105(D) of the ABA Model Code of Professional Responsibility provides: "If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment." *See also* N.Y. Jud. Law DR 5–105(D). Law firm disqualification is considered necessary in order to ensure that confidences disclosed by a former client to an attorney will not be shared with another member of the attorney's firm who will then use the confidential information to the detriment of the prior client. *See, e.g., Uzzi,* 549 F.Supp. at 982–84. As Judge Sand noted in *Uzzi,* a rule which made disqualification depend upon whether the Court accepted the representations of the lawyers that they had not shared information from the former client would be difficult to enforce, would require the Court to make judgments as to the integrity of the lawyers involved, and would raise serious questions of public perception concerning the conduct of lawyers. *Id.* at 984–85; *see also Cheng v. GAF Corp.,* 631 F.2d 1052, 1058–59 (2d Cir.1980), *vacated on other grounds,* 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981).

However, there are substantial differences between an institution such as the Federal Defender Division and a private law firm. Unlike lawyers in a firm, lawyers at the Federal Defender Division do not have a financial interest in matters handled by their colleagues which might give them a motive to share confidential information. Since Federal Defender lawyers are assigned to their clients and are not retained by them, there is no danger, in reality or public perception, that a defendant will retain a Federal Defender attorney for the purpose of benefitting from information imparted to the lawyer or to the Federal Defender Division by a prior client. Moreover, the large volume of cases handled by Federal Defender lawyers makes it unlikely that the lawyers in that office share confidences of their clients in routine cases, such as that of Vasquez's, and makes highly credible the representation that Joy has almost no recollection of Vasquez. *Cf. Uzzi,* 549 F.Supp. at 984 (considering the smallness of a firm in applying law firm disqualification). Thus, the concern about the opportunities for abuse and manipulation expressed by Judge Sand in *Uzzi* does not exist in this case. *See, id.* at 985.

Recognizing these factors, courts have drawn a distinction between lawyers in the Federal Defender Division and lawyers in private practice in situations similar to that at issue here. Indeed, New York's highest court has held:

> While it is true that for the purpose of disqualification of counsel, knowledge of one member of a law firm will be imputed by inference to all members of that law firm ..., we do not believe that the same rationale should apply to a large public-defense organization such as the Legal Aid Society.

*People v. Wilkins,* 28 N.Y.2d 53, 56, 320 N.Y.S.2d 8, 10, 268 N.E.2d 756 (1971) (citation omitted).

A similar conclusion was reached by Judge Sotomayor of this Court in her well reasoned opinion in *United States v. Lech,* 895 F.Supp. 586 (S.D.N.Y.1995) in which she stated:

> One of the main presumptions underlying this prohibition is that lawyers in the same firm either share or have access to the

confidences. of all of the firm's clients. Some courts and commentators believe, however, that this presumption must be viewed flexibly in cases involving government departments and legal aid societies, because frequent turnover and heavy caseloads considerably reduce access to client confidences. See, e.g., *United States v. Judge*, 625 F.Supp. 901, 902–03 (D.Hawai'i 1986) (finding "Chinese Wall" sufficient to rebut presumption that client confidences shared where federal defenders represented prosecution witness on prior unrelated case) (citing ABA Comm. on Ethics & Professional Responsibility, Formal Op. 342 (1975), reprinted in, 62 A.B.A.J. 517 (1976)); ABA Model Rule 1.10, cmt. 3 (court considering whether to treat legal service attorneys as members of the same firm should consider particular rule involved as well as specific facts of situation). *Id.* at 591.

Likewise, in *Judge*, 625 F.Supp. at 902, cited by Judge Sotomayor, the court rejected a similar attempt by the government to disqualify an attorney in the Office of the Federal Public Defender. In so doing, the court noted that DR 5–105(D) has not been applied to disqualify entire government legal departments and rejected the government's argument that the same exception should not apply to the Office of the Federal Public Defender. *Id.*

The American Law Institute has also recognized that imputed disqualification under DR 5–105(D) should not automatically apply to public defender offices. Section 203(d)(iv) of the Restatement (Third) of Law Governing Lawyers provides:

> Public-defender offices. In a public-defender office, conflict of interest questions commonly arise when the interests of two or more defendants so conflict that lawyers in a private-practice defense firm could not represent both or all the defendants (see § 210). Where defenders in the same office discuss cases and have access to each other's files, § 203(3) imputes their conflicts to each other. In the absence of such access, however, public defenders who are subject to a common supervisory structure within an organization ordinarily

should be treated as independent for purposes of § 203(2). The lawyers provide legal services, not to the public defender office, but to individual defendants. Ordinarily, the office would have no reason to give one defendant more vigorous representation than other defendants whose interests are in conflict. Thus, while individual defendants should be represented by separate members of the defender's office, the representation of each defendant should not be imputed to other lawyers in an office where effective measures prevent communication of confidential client information between lawyers employed on behalf of individual defendants.

Restatement (Third) of Law Governing Lawyers, § 203(d)(iv) (Proposed Final Draft No. 1 1996).

In light of the above considerations, the Court concludes that the "balancing of interests" in this case strongly favors upholding Reynoso's Sixth Amendment right to retain the counsel of his choice, Roland Thau: (1) to disqualify Thau at this point would severely prejudice Reynoso, who will not only lose the services of an attorney who has been vigorously representing his interest, but will also be forced to remain in jail prior to trial for the substantial period of time that new counsel would need to become familiar with the case; (2) there is no danger that any confidences that Vasquez communicated to Joy will be communicated to Thau or that the trial will be tainted; and (3) there is no basis to believe that a reasonably informed public would perceive any impropriety in Thau being permitted to continue his representation of the Reynoso. To the extent that counsel for Vasquez has stated that his client perceives an impropriety in Thau representing Reynoso, it is the perception of a reasonably informed public which is the touchstone, not that of a particular individual. *See Essex Chem. Corp. v. Hartford Accident & Indem. Co.*, 993 F.Supp. 241 (D.N.J.1998). As the Second Circuit observed in *Board of Educ. v. Nyquist*, 590 F.2d 1241, 1247 (2d Cir.1979): "when there is no claim that the trial will be tainted, appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases."

Even if the balance did not tip so strongly in favor of Reynoso's right to the counsel of his choice, there is another factor which should go into the balance that mitigates the concern that some "secret" of Vasquez that was imparted to Joy may be inadvertently disclosed during the cross-examination by Thau.

Vasquez has entered into a cooperation agreement with the Government which requires that he "(a) shall truthfully and completely disclose all information with respect to the activities of himself and others concerning all matters about which this office inquires of him; ... (d) shall provide to this Office, upon request, any document, record, or other tangible evidence relating to matters about which this Office or any designated law enforcement agency inquires of him; (e) shall truthfully testify before the grand jury and at any trial and any other court proceeding with respect to any matters about which this Office may request his testimony; ...."

By these terms of his plea agreement, Vasquez effectively has given up any expectation that he can keep secret any wrongdoing in which he has ever engaged. No one familiar with the operations of the United States Attorney's Office would doubt that prosecutors with whom he is cooperating have questioned him as thoroughly as Joy, if not more, concerning his criminal activities and other wrongful conducts that might impeach his credibility. Realistically, one would seriously doubt that there is any relevant fact about Vasquez which Joy ever knew that has not been thoroughly discussed with the prosecutors. Indeed, anyone who has observed trials involving a cooperating witness knows that on direct examination the Government invariably elicits testimony concerning any bad act of the witness that is liable to be the subject of cross-examination.

Thus, in balancing a Vasquez's interest in protecting the confidences he may have shared with Joy against Reynoso's right to counsel, little if any, weight need be given to the concern that some matter which Vasquez might legitimately consider secret will be disclosed during a cross-examination by Thau.

For the foregoing reasons, the motion to disqualify Mr. Thau is denied.

**SO ORDERED.**